## LOCHHEAD et al. v. JENSEN.

No. 2392.    Decided December 30, 1912 (129 Pac. 347).

1. NEGLIGENCE—AUTOMOBILE ACCIDENT—DEATH OF GUEST—SPEED—EVIDENCE. In an action for the death of an invited guest riding in defendant's automobile, as the result of the machine skidding and turning over into a ditch, evidence *held* to require a finding that the machine was not running at a greater speed than fifteen to eighteen miles an hour at the time. (Page 102.)

2. NEGLIGENCE—AUTOMOBILE ACCIDENT—DEATH OF GUEST—SPEED. Under Laws 1909, chap. 113, limiting the speed of automobiles in the highways outside of incorporated cities to eighteen miles an hour, evidence that at the time decedent, an invited guest of defendant, was killed by the turning over of defendant's automobile it was being driven on a country highway, described by plaintiffs as in good condition and smooth, and by defendant as somewhat rough, with chuck holes in it, at from fifteen to eighteen miles an hour was insufficient to justify a finding of actionable negligence. (Page 102.)

3. TRIAL—INSTRUCTIONS—APPLICABILITY TO PLEADINGS. In an action for the death of a guest by the turning over of defendant's automobile while being driven along a country highway, the complaint charged negligence solely in that the machine was being run at a dangerous rate of speed. *Held*, that instructions authorizing a verdict for plaintiffs, not only on a finding of the negligence alleged, but also if the evidence showed negligent or careless operation, or failure to preserve a reasonable lookout for obstructions or dangers in the road, were erroneous, as beyond the issues. (Page 103.)

4. NEGLIGENCE—IMPUTED NEGLIGENCE. Where decedent accepted an invitation by defendant to ride in defendant's automobile, and decedent sat in the back seat, exercising no control over or direction of the operation or handling of the machine prior to the time it was thrown over an embankment, and decedent was killed, defendant's negligence, if any, in operating the machine could not be imputed to decedent. (Page 104.)

APPEAL from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by Pearl H. Lochhead and others against Jacob Jensen.

Judgment for plaintiffs.    Defendant appeals.

REVERSED AND NEW TRIAL GRANTED.

*J. E. Bagley* and *J. G. Heywood* for appellant.

*Richards & Boyd* for respondents.

STRAUP, J.

This is an action to recover damages for the death of William S. Lochhead, alleged to have been caused by the negligence of the defendant. In the complaint it is alleged that the deceased, at the invitation of the defendant, entered the defendant's automobile to take a ride, and that "the defendant acted as operator or driver of his said automobile, and determined and regulated the speed at which it should run, and while the deceased was so riding with him as his guest, at or near Pleasant View, in utter disregard of his duty in that respect, the defendant negligently, carelessly, and recklessly caused his said automobile to run at a furious and dangerous rate of speed, to wit, at the rate of about fifty miles an hour, and so fast that the automobile violently jumped and overturned, thereby forcibly throwing the deceased upon and against the ground," by reason of which he was injured and killed. The foregoing allegations with respect to the speed at which the automobile was operated are the only charged acts of negligence. They were put in issue. The trial resulted in a verdict and judgment in favor of the plaintiffs. The defendant appeals. He claims that the evidence is insufficient to support the allegations of negligence, and that the court erred in the charge.

The evidence shows that the deceased entered the defendant's automobile at the defendant's invitation, and that the automobile was operated by the defendant along a highway in the country. The accident happened between three and four o'clock in the afternoon. There were three persons in the automobile, the defendant, the deceased, and one Sanderson. Sanderson, a witness called by the plaintiffs, testified that the speed of the automobile at the time of the accident was about fifteen miles an hour; that at the place of the accident there were "dust holes" or "ruts" in the road; that it was "pretty rough;" that the ruts or holes were partially covered or filled with dust or sand; and that the auto-

mobile struck or "bumped" into one of the holes or ruts and "slid" or "skidded" first to the one side and then to the other of the road, and left it and ran into or over a ditch and "somersaulted," casting the deceased out. He further testified that "it would not have been possible for us to observe that there was a depression or ditch where this machine went off of the main line;" that "there was nothing to obscure our vision ahead when we were approaching this place," but, "approaching the place where the machine went down, looking ahead it presented the appearance of the level of a street." Other witnesses for plaintiffs testified that the road at the place of the accident was smooth and in good condition, except for dust and small ruts; that shortly after the accident they noticed tracks of the automobile, showing that it had moved from one side of the road to the other and went down the embankment. Another witness testified that he saw the tracks where the automobile left the road, and that they led to a "chuck hole" in the road, which was struck by the automobile. Other witnesses for the plaintiffs testified that between two and three o'clock they, some distance from the place of the accident, met an automobile going "very fast," in which were three men; but they were unable to identify or describe either the automobile or the occupants. Still another witness, about 350 feet away, drying fruit, testified that she heard the noise of the automobile, glanced down the road, and it appeared to her "like the machine raised right up in the middle of the road, like the front wheels went in the air," and "then turned to the south of the road" and went over. The defendant testified that, while operating the automobile in about the center of the road, along the place of the accident, at a speed of about fifteen or eighteen miles an hour, "the machine skidded to the north and then to the south and went off the road, and, as I was trying to get back on the road, struck something and turned over. . . . Just before this there were chuck holes in the road." The machine "struck the chuck holes. There were three or four right close together. . . . That caused me to turn over this way a little and

then to the left. . . . The machine skidded and then jumped off into the ditch."

Now, upon this evidence, what was the highest speed the jury were licensed to find the automobile was run at the time of the accident? We think at fifteen or eighteen miles an hour. The testimony of those that they, some distance from the place of the accident and half an hour or more before it occurred, met an automobile going "very fast," in which were three men, but were unable to identify or describe either the automobile or the occupants, is of no consequence. Nor is the testimony of the fruit dryer that she glanced down the road and saw what appeared to her the "front wheels of the automobile go in the air," the machine go off the road, and down the embankment, without even an opinion as to the speed at which it was operated.

Now, were the jury licensed to say that operating an automobile on a public highway outside of an incorporated city or town at a speed of from fifteen to eighteen miles an hour was negligent? Under the statute (chapter 113, Sess. Laws 1909) it was lawful at such a place to operate an automobile at a speed not to exceed twenty miles an hour. Of course, a jury is permitted to say in some instances, dependent upon the particular attendant facts and circumstances, that the operation of an automobile within the speed limit as fixed by statute or ordinance is nevertheless negligent. Were they permitted to do so here? We think not, for the reason that sufficient facts and circumstances attendant upon and surrounding the case were not shown upon which the conclusion of negligence in such particular may be predicated. Certainly a jury could not be permitted to predicate such negligence on the mere fact that the automobile was operated at a speed of from fifteen to eighteen miles an hour. No facts or circumstances were here shown, except that the road at the place of the accident was dusty or sandy; that there were ruts or chuck holes in the road, but the character or extent of them not shown or described; and that the road was "pretty rough." The plaintiffs in this

particular, by their evidence, endeavored to show that the road was in good condition and smooth; the defendant that it was somewhat rough. The former to prove themselves out of court; the latter in. For whatever license the jury had to predicate negligence upon a speed of from fifteen to eighteen miles an hour because of a bad condition of the road, the plaintiffs did all they could to destroy it by showing that the road was smooth and good; and the defendant tried as hard to keep himself in by endeavoring to show that the road was bad. We do not think he quite succeeded. We think the evidence was not sufficient to let the case to the jury on the alleged negligence.

Now as to the charge. Notwithstanding the single act of alleged negligence—running the automobile at a high and dangerous rate of speed—the court nevertheless charged that if the jury found that the defendant "was driving said car negligently or carelessly, or if you believe that he was driving at a reckless or dangerous rate of speed," and that "the death resulted directly and proximately from such negligence or carelessness, then you should find" for the plaintiffs. Again, the court charged that if the jury found that "the defendant was not in the exercise of reasonable care in the operation of his said car, and that by reason thereof the injury occurred to the said deceased, and the said negligence of the said defendant was the direct and proximate cause of the said injury," then the defendant was liable. The court also charged that it was the duty of the defendant in operating the automobile "to use due diligence in the driving of the same, so as to have it under reasonable control at all times to avoid injury; and it is the duty of the driver of said car to keep a reasonable lookout for any obstructions or dangers that may be in the road upon which he is driving, and if he fails to do so, and through his negligence causes injury to others, then he is liable therefor." The court further charged that in determining whether or not the defendant "was exercising reasonable care" the jury might consider "the manner in which the defendant was driving" and "the speed at which he was

driving." It is thus seen that the charge clearly presented to the jury questions of negligence far beyond that charged in the complaint, and permitted the jury to base a verdict, not only upon the negligence alleged, but also upon any negligent or careless operation, management, control, or driving of the automobile, or failure to observe or keep a reasonable lookout for obstructions or dangers in the road. That the charge, in view of the alleged negligence, was erroneous and prejudicial needs no argument.

Since the judgment, for the reasons indicated, must be reversed and a new trial granted, it is also proper to say that the contentions of the appellant that he was entitled to go to the jury upon the question of contributory negligence of the deceased and of "imputed" negligence of the defendant, if any, to the deceased, are wholly groundless. There is no evidence to show that the deceased did or said, or failed to do or say, anything, except that he, at the invitation of the defendant, sat in the back seat of the automobile, and was thrown over the embankment and killed. There is no evidence to show that he had or exercised any control over or direction of the operation or handling of the automobile, or that he in any particular consented to or acquiesced in the manner of its operation. The appellant has urged that "the ride in the automobile was the mutual enjoyment of all three" occupants, and since the plaintiff did not show that the deceased protested against the manner of its operation it must be presumed that he acquiesced therein; and therefore the negligence, if any, of the defendant must be imputed to the deceased. In view of the evidence, the appellant is wrong, both as to the burden of proof and the law. The ruling of the court in refusing to submit such questions to the jury on the evidence adduced was right.

For the reasons heretofore given, the judgment of the court below is reversed and a new trial granted. Costs to the appellant.

FRICK, C. J., and McCARTY, J., concur.