# RUSSELL v. WATKINS.

No. 2933.    Decided February 20, 1917.    Rehearing Denied May 5,
1917.    (164 Pac. 867.)

1.  APPEAL AND ERROR—RECORD—SUFFICIENCY—MOTION FOR NON-
    SUIT.  Whether motion for nonsuit should have been sustained
    will not be reviewed, unless it is apparent from the record that
    the motion was made before the trial court and properly in-
    cluded in the record on appeal.  (Page 601.)

2.  WITNESSES—CORROBORATION—UNDISPUTED TESTIMONY — REMOTE-
    NESS—CONDITION OF MACHINERY.  In action for injuries in motor
    vehicle collision, where defendant's testimony that his brakes
    were all right was undisputed, exclusion of testimony of repair-
    man to whom defendant took the car twelve days after the
    accident was not error; being both remote in time and corrob-
    orative of undisputed testimony.  (Page 602.)

3.  HIGHWAYS—COLLISIONS—ACTIONS FOR INJURIES—INSTRUCTIONS.
    In action for injuries in highway collision, instruction that
    negligence is the failure to do what a reasonably prudent per-
    son would ordinarily have done under the circumstances, or
    doing what such person would not have done, and that in con-
    sidering the question who was negligent the jury should test
    it by the definition of negligence, and take into account all
    facts and circumstances developed, though not well worded, was
    not erroneous.  (Page 603.)

4.  TRIAL—QUESTION FOR JURY—WEIGHT OF NEGATIVE TESTIMONY.
    The weight of negative testimony of witnesses as to giving
    warning signals ordinarily is for the jury; but when physical
    conditions and attending circumstances render it highly im-
    probable that they could hear, the rule is otherwise.  (Page
    604.)

5.  HIGHWAYS—COLLISIONS—NEGLIGENCE.  In action for injuries in
    collision on highway between motorcycle and automobile, auto-
    moble driver was not liable for negligence, if any, in permitting
    brakes to become deficient where, when the danger was discov-
    ered, the collision could not have been averted, regardless of the
    character of the brakes, or even had he reversed the power.
    (Page 606.)

6.  HIGHWAYS — COLLISIONS—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
    Where plaintiff was a passenger on the rear of the motorcycle,
    which the driver rode on the wrong side of the highway at a
    high speed without protest from plaintiff, and in turning out
    for a team they were injured, plaintiff was contributorily negli-

gent, and could not recover from the owner of the automobile which they then struck.[1]   (Page 608.)

Appeal from District Court, Second District; *Hon. N. J. Harris*, Judge.

Action by Frank Russell against Richard C. Watkins.

Judgment for plaintiff.   Defendant appeals.

REVERSED and new trial granted.

*M. M. Warner* for appellant.

*C. R. Hollingsworth* and *Joseph E. Evans* for respondent.

CORFMAN, J.

This was an action brought to recover damages for personal injuries sustained by plaintiff by reason of the alleged negligence of the defendant in the use and operation of an automobile upon the public highway.   At the commencement of the action the plaintiff was under age, but on the trial had arrived at maturity; and thereafter, by stipulation, the case was prosecuted without guardian.   The case was tried to a jury, resulting in a verdict in favor of the plaintiff, upon which judgment was entered by the court against the defendant for the sum of $1,000.   From this judgment the defendant appeals.

The plaintiff in his complaint in substance alleged that the defendant was guilty of negligence in that he negligently failed to sound the horn of his automobile; that he negligently drove the same at an excessive and unreasonable rate of speed; that he negligently operated and managed said automobile; and that he negligently permitted the brakes thereof to be out of repair so as to be ineffective.   The defendant denied all acts of negligence, and set forth in his answer, with great particularity, the facts relating to the accident and the manner in which it occurred.   He also averred that the

---

[1]*Lochhead* v. *Jensen*, 42 Utah 99, 129 Pac. 347; *Atwood* v. *Utah Light & Ry. Co.*, 44 Utah 366, 140 Pac. 137; *Martindale* v. *Oregon Short Line R. R. Co.*, 48 Utah 464, 160 Pac. 275.

accident and consequent injury of the plaintiff were caused
by the negligence of the driver of the motorcycle, herein re-
ferred to, and through the negligence of the plaintiff himself.

Briefly stated, it appears from the evidence that the plain-
tiff, Frank Russell, a young man then between the age of
nineteen and twenty years, on the 8th day of May, 1914, was
invited by one Walter Garner to make a trip from Ogden to
Salt Lake City and return on a motorcycle.  The trip was
made together, Garner, the owner, driving, handling and con-
trolling the motorcycle, the plaintiff occupying a seat to the
rear of Garner, their intent and purpose being on arriving at
Salt Lake City, to attend together a track meet there. Leaving
Salt Lake City at about five fifteen for their return trip to
Ogden they had proceeded along the public highway, known
as the Davis County road, between Salt Lake City and Ogden,
for about ten miles, when they observed a team and vehicle
approaching them.  The team and vehicle were on the extreme
left hand or west side of the road traveling south.  The mo-
torcycle on which they were riding was then traveling north
on the west or same side, contrary to the rule of the road. The
team and vehicle were in charge of and being driven by one
Mr. Bryson, and behind the vehicle were, being led two young
spirited horses, tied with halter straps or ropes.  Behind the
vehicle on the same or west side of the road the defendant was
also driving south from Ogden in his one-seated automobile or
roadster motor car, and on nearing the horses and vehicle
under the control of Bryson, when within forty or fifty feet,
proceeded to turn out to the left, and near the center of the
highway, for the purpose of passing the Bryson vehicle and
horses.  At the same time the plaintiff and Garner proceeded,
when within about 150 feet of the Bryson vehicle, to cross
from the west to the east side of the highway.  The highway
at this point was sixty feet in width.  It had recently been
worked, was rough at the center, and the public was then
traveling two paths, one on the east and one on the west side.

It appears from the undisputed testimony that neither the
plaintiff nor Garner had seen the automobile approaching
from the rear of the Bryson vehicle, nor had the defendant
seen the approach of the motorcycle to the front, and that the

views of the drivers of both motorcycle and automobile were so obscured by the Bryson vehicle and horses that neither was conscious or aware of the immediate presence of the other until, on turning out from the west traveled track of the highway, when their machines almost instantly collided, resulting in the death of Garner and the injuries to plaintiff complained of in this action, and for which judgment was had in plaintiff's favor against the defendant in the sum of $1,000, as before stated. It appears from the evidence that the plaintiff was not experienced in the use of a motorcycle; that the defendant Watkins for many years had owned and personally operated an automobile on the public highways throughout the state while in the performance of his official duties, and the carrying on of his business and professional work, as state school architect. It further appears from the evidence that the parties met and the accident occurred at about six o'clock p. m.; that Garner, for some reason unaccounted for, in the operation of his motorcycle, had, shortly before meeting the Bryson vehicle, crossed from the east traveled to the west traveled track of the highway, and that the plaintiff had silently acquiesced in Garner running his motorcycle on the wrong side of the highway and seeking to again cross from the west to the east traveled track on meeting the Bryson vehicle. From the evidence it further appears that when the defendant approached the Bryson vehicle and horses at the rear with his automobile, the horses tied to the rear of the vehicle became restless and began moving about, the horse on the east moving or shying out to the east of the vehicle, thus requiring the defendant to drive his machine to a greater distance to the east in order to make for safety in passing; that the recognition of the respective occupants and the meeting of the automobile and the motorcycle on the highway was almost instantaneous.

Defendant on appeal makes seven assignments of error. Those which are material and apparently relied upon by appellant we will now discuss.

1. It is contended by appellant that at the conclusion of the plaintiff's testimony a motion for nonsuit was interposed by defendant, and that the same should have been

sustained by the trial court. We have diligently searched the record on appeal, and, after doing so, we are very certain no such motion appears therein. Therefore it is useless for this court to consider the merits or demerits of such a motion without it being apparent from the record here for review that such motion was made before the trial court and properly included in the record on appeal here alone considered.

2. It is also contended that the exclusion by the court of the testimony of the witness Whiting, when questioned by defendant's counsel concerning the condition of defendant's automobile and its brakes, when the defendant had brought the car to the witness for repairs some ten or twelve days after the accident, as well as to the condition some time before the accident, when certain repairs were made upon it by witness, was error. At most, had this testimony been introduced and received, it would have been corroboration of the undisputed testimony of the defendant himself as to the condition of the brake rod and the brakes of the automobile, and, owing to the conditions sought to be testified to, being at a time so remote from the time of the accident, we are of the opinion the court very properly excluded it, and the defendant could not have been prejudiced thereby.

3. Defendant complains of certain instructions given by the court, particularly instructions numbered 4 and 9, as being prejudicial to him. The fourth instruction was in the following language:

"The court charges you as a matter of law that negligence is the failure to do what a reasonably prudent person would ordinarily have done under the circumstances of the situation, or doing what a reasonably prudent person under the existing circumstances would not have done. The essence of the fault may lie in omission or commission. The duty is dictated and measured by the exigencies of the occasion. In considering the question as to who was negligent in this case, you should test it by the definition of negligence given you in this charge, and take into account all of the facts and circumstances developed in the case relating to the question."

It may be that this instruction could have been better

worded for the purpose of conveying the court's meaning to the jury; however, we cannot conceive how a jury, by giving the words any consideration at all, could con-       **3** clude otherwise than that the court intended that the jury was to be the sole judges of the testimony and find who was negligent; and then again we are of the opinion that, conceding the exception, well taken as to this particular instruction, the instruction following (numbered 5) clearly cures the defect contended for by counsel.

It is contended that the ninth instruction complained of was not justified under the evidence, in view of the testimony of the plaintiff given at the trial concerning conditions under which he remained an occupant or rider of the motorcycle immediately before the accident. Again, we have but to refer to instruction No. 10, given by the court, to find that the defendant could not have been prejudiced by this instruction as given, and that the instructions of the court, taken as a whole, and as the court expressly instructed the jury they should be considered, contains no error prejudicial to the rights of the defendant to a fair trial.

4.: The fifth and sixth assignments of error, to the effect that there is no legal evidence to sustain the verdict of the jury, and that, therefore, the court erred in entering final judgment thereon, and in denying defendant's motion for a new trial, may well be considered together, and present a more difficult problem for consideration. Admittedly, the plaintiff's right to recover from the defendant in this case was predicated upon one or more of three alleged acts of negligence of the defendant in the use and operation of an automobile upon the public highway, and, as tersely stated by both parties in their briefs, are, to wit: (1) Omission to give any signal of approach; (2) driving at an unreasonable rate of speed, under all attending circumstances; (3) defective brakes, preventing the automobile from being stopped within a reasonable distance. It was incumbent on the plaintiff to establish with some degree of certainty that defendant's acts of omission, or commission, contributed to and was the proximate cause of the injuries of which he complains. Necessarily for the proper and just determination as to whether the de-

·fendant should be held to answer for the plaintiff's injuries, due consideration should be given as to the conditions and circumstances confronting the defendant immediately before and at the time of the accident.

As to the first proposition, that of the defendant failing to signal his approach, before the accident, we have searched the record in vain for any tangible evidence to sustain plaintiff's contention. The direct and positive testimony of the defendant himself concerning his nearing the place of the accident, namely, "I came up behind a man that had a wagon and two horses at the back, and I honked my horn before I endeavored to turn out; it was about, I should think, 40 or 50 feet before I tried to turn out; I couldn't get his attention, however"— stands in the record, to our minds, wholly uncontradicted. True, some of the witnesses testifying for plaintiff, particularly the plaintiff and the witness Bryson, say that they "did not hear" a warning. When we take into consideration that the plaintiff, according to his own testimony, was at the time without thought and wholly unaware of the approach of defendant's automobile, that he was seated on a motorcycle moving at the rate of 15 or 20 miles an hour, that his view of the traveled road was obscured by Bryson's approaching wagon and horses, and of necessity· had to cross immediately to the east side of the highway for safety and in passing the Bryson vehicle, and that the witness Bryson was, at the same time, apprehensively riveting his attention on the motorcycle approaching him, on account of his own safety, and through fear of the horse he was driving making him trouble, we may well believe these witnesses "did not hear" the horn sounded by the defendant on his approach.

The weight of negative testimony of witnesses, as to the giving of signals, ordinarily is for the jury to determine; but, when physical conditions and the attending        4 circumstances are such as to render it highly improbable that they could hear, we think the rule should be and is otherwise. *Jordan* v. *Osborne,* 147 Wis. 623, 133 N. W. 32; *Menard* v. *Boston, etc., R. R.,* 150 Mass. 386, 23 N. E. 214. In the Massachusetts case, last above cited, the court, in speaking of the weight of this class of testimony, says:

"A witness may be in any conceivable attitude of attention or inattention, which will give his evidence value, or leave it with little or no weight."

The second charge of negligence on the part of the defendant, that of driving his automobile at an unreasonable and excessive rate of speed, under the attending circumstances, to our mind, is equally untenable.

Plaintiff's counsel properly contends that if the record contains substantial evidence to support the acts of negligence charged in the complaint, or even if there is only a conflict in the testimony, the finding of the jury will not be disturbed in this court on appeal. But here, after a careful perusal of the record, we can find no testimony upon which to base a finding that defendant was, under the attending circumstances, driving his machine at a greater rate of speed than any prudent and careful operator would do. The evidence clearly and conclusively shows that he had his machine under perfect control; that he had, as a precaution, slowed down the engine and changed the gears as a precaution in passing two young and fractious horses; that he was lawfully driving on the right-hand side of the road; that on approaching the horses tied to the rear of Brysons' wagon he had a clear view beyond, and no motorcycle was to be seen; that he did not assume, and, as a matter of law, no duty was imposed upon him to assume, that others would violate the rule of the road by traveling toward him on the wrong side of the road, and, unexpectedly, as to him, move from the wrong to the right side of the highway from immediately in front of the Bryson horses and wagon.

These, as to attending circumstances, are the undisputed facts as disclosed by the record on this appeal.

The Utah Laws (Session Laws 1915, c. 80, Section 8), as to speed limit, provides:

"No person shall operate a motor vehicle or motorcycle upon any public street or highway at a speed greater than is reasonable and safe, having due regard for the width, grade, character, traffic and common use of such street or highway; or so as to endanger life, limb or property in any respect whatever."

Again, relative to the approach of another, driving an animal in the same direction:

"And if traveling in the same direction, he shall use reasonable caution in order to avoid frightening the animal or causing accident; and in approaching or passing such animal the operator shall not use the exhaust cut-out of his vehicle, or cause any other unnecessary noise."

Under all the conditions and circumstances, and after careful examination and consideration of the record, we can find no evidence supporting the contention of the plaintiff that defendant was driving at any greater speed than was ordinary and reasonable, and therefore such contention must fail.

Coming to the last charge of negligence complained of against the defendant, there is absolutely no evidence whatever tending to show that defective brakes in any manner contributed to the accident. The defendant testified that the brakes were relined shortly before, and that they were in perfect working condition at the time. He also testified that there was no opportunity to use the brakes before the collision between his machine and the motorcycle occurred. To use the exact language of the defendant:

"Q. Was it possible for you, taking into consideration the length of time that intervened from the time you first saw this automobile, or this motor coming here, to change the position of your car at all? A. No, sir; it wasn't the fractional part of a second until I seen them before it was struck—it wasn't the fractional part of a second; if I had brakes or something that would reverse I couldn't have stopped the accident; it wasn't time."

While some of the witnesses, for the plaintiff testified that the defendant, immediately after the accident, made some remark that his brakes were out of order, or that they were not working, the testimony is not only in conflict, but very uncertain, as to whether the remarks of defendant related to the condition of the brakes before or after the accident as testified to by the defendant; that in the collision the brake rod had been broken or the end threads stripped of their holding. Anyway, in view of the undisputed testimony, that no opportunity availed to apply the

brakes and had they been applied the accident could not have been avoided under the circumstances, the evidence as to the brakes conclusively appears of no materiality. Consequently we find no merit in the contention that defective brakes in any way contributed to the accident. The answer of the defendant in this action charges the plaintiff with contributory negligence, and appellant's counsel in his brief cites numerous authorities in support of his contention that under the testimony, as shown by the record, plaintiff is chargeable therewith. The court, under proper instructions, submitted the question of the plaintiff's negligence to the jury; and the effect of the verdict in favor of the plaintiff and against the defendant is to say that the plaintiff was not negligent.

Here again we are of the opinion that the verdict of the jury, under the evidence, cannot be sustained, and that in arriving at a verdict in favor of the plaintiff and against the defendant the jury clearly disregarded the instructions of the court. After expressly charging the jury that the negligence of Garner, the driver of the motorcycle, was not to be imputed to the plaintiff, if the jury found Garner was negligent, the court further submitted:

"I charge you also that if you find from a preponderance of all of the evidence in this case that the plaintiff at said time, while so riding on said motorcycle, knew that the motorcycle was being driven on the west side of the highway, while going north, and that it was being driven and operated by the said Garner at an unlawful and dangerous rate of speed, and such acts, or either of them, if so proven, was the direct or proximate cause of the injuries, or contributed to the cause of the injuries received by the plaintiff, and, with such knowledge of such acts and conduct of the deceased Garner, the plaintiff willfully continued to be and remain on said motorcycle, so being driven by the said Garner, then I charge you that the plaintiff would also be guilty of such contributory negligence, and your verdict should be for the defendant, no cause of action."

It is the undisputed testimony that Bryson, in charge of a vehicle and horses, was driving south at the time of the acci-

dent on the west traveled track of the highway; that the defendant was traveling with his automobile on the same west traveled track, also going south; that the plaintiff was traveling in front of the Bryson vehicle and horses going north; and that neither the plaintiff nor defendant was aware that the other was approaching, on account of the Bryson outfit being between them and obscuring their view.

The plaintiff was fully aware of all the conditions and circumstances. He was voluntarily an occupant of the motorcycle with Garner. It was daylight; he was fully aware of Garner driving his motorcycle on the wrong side of the road in front of an approaching vehicle and horses, and it was his duty to understand and know that others were likely approaching from behind the vehicle and horses in charge of Bryson, and that they would obey the law of the road and pass to the east of Bryson, and that he and his companion on the motorcycle in approaching so closely to Bryson would have to make a sudden turn to the east of the highway at the risk of colliding with any vehicle that might be to the rear of Bryson and seek to pass; and yet he made no protest, and quietly acquiesced and assented to all these conditions upon the main and much used thoroughfare between the heavily populated cities of Salt Lake City and Ogden.

We can reach no other conclusion than that plaintiff and his companion Garner were, under the circumstances, grossly negligent, and that the accident would not have happened had they exercised ordinary care and judgment in driving their motorcycle; and that while Garner was negligent the plaintiff too was negligent in not protesting against the driving of the motorcycle as it was thus driven. We are not to be understood in so holding that we impute the negligence of Garner to the plaintiff, nor that we in any measure qualify the rulings of this court in the cases of *Lochhead* v. *Jensen*, 42 Utah 99, 129 Pac. 347; *Atwood* v. *Utah Light & Ry. Co.*, 44 Utah 366, 140 Pac. 137; *Martindale* v. *Oregon Short Line R. R. Co.*, 48 Utah 464, 160 Pac. 275 —cited by respondent's counsel. Frick, J., speaking for this court in *Atwood* v. *Utah Light & Ry. Co.*, *supra*, and commenting, says:

"Of course every one who may be riding in a vehicle, whether as passenger, invitee, or otherwise, must always exercise ordinary care and prudence to avoid injury to himself, and to that end, in case of imminent danger, must leave the vehicle in case such a course is practical and necessary to avoid injury. Again, he may not sit silently by and permit the driver of the vehicle to encounter or enter into open danger without protest or remonstrance and take the chances, and, if injured, seek to recover damages from the driver of the vehicle or from the one whose negligence concurred with that of the driver's, or from both."

When we consider all the circumstances under which this accident occurred, we can arrive at no other conclusion than that the verdict rendered by the jury cannot be sustained under the evidence; that defendant should have been granted a new trial, and therefore the judgment of the court below should be reversed, with costs to appellant. It is so ordered.

FRICK, C. J.

I concur with Mr. Justice CORFMAN in his conclusion reversing the judgment and in granting a new trial. I also concur in his conclusion that the evidence is insufficient tc justify a finding that the defendant was guilty of negligence in failing to signal his approach by sounding the horn on his automobile. While, under ordinary circumstances and conditions, the evidence given by the witnesses, that they did not hear a certain signal or did not see a certain thing occur, is a matter for the jury, yet, as pointed out in the opinion, such is not always and under all circumstances the case. Under the peculiar facts and circumstances of the case at bar, all of which it is impossible to correctly reflect in the course of an ordinary opinion, the mere fact that the witnesses testified that they did not hear the horn sounded cannot be dignified with the term evidence such as will raise a conflict. Indeed, under all the circumstances it would have been most remarkable if any one of the witnesses had in fact heard defendant's horn sounded. Again, it is very clear from a consideration of the whole record that the failure to sound the horn, if it be assumed that it was not sounded, in any way could have contributed to the accident. In either view, therefore, the alleged negligence in that regard was without any effect or influence.

I cannot concur, however, in the conclusion reached by my Associate that the plaintiff was guilty of contributory negligence as a matter of law. That question, in my judgment, was properly submitted to the jury, and the instruction in which it was submitted to them not having been excepted to, it, I think, became the law of this case. In any event, however, I do not think that plaintiff's conduct, under all the circumstances, was such that we may say, as a matter of law, he was guilty of contributory negligence which directly contributed to the accident or to his injury. I, however, fully concur in the conclusion that the negligence of Garner, the driver of the motorcycle, is, under the law of this jurisdiction, not imputable to the plaintiff.

McCARTY, J. (concurring).

As I view the record the only conclusion permissible from the evidence is that the injuries received by plaintiff are the result of his own negligence; and I am also clearly of the opinion that the evidence wholly fails to establish negligence on the part of the defendant, and that the court therefore erred in refusing to direct a verdict for the defendant.

I concur in the reasoning of, and in the conclusion reached by, Mr. Justice CORFMAN.